UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KENAI IRONCLAD CORP. | CIVIL ACTION NO. |
| | SECTION: |
| VERSUS | |
| CP MARINE SERVICES, LLC., TEN MILE EXCHANGE, LLC., CROWN POINT VENTURES, LLC, DARDAR INVESTMENTS, LLC., AND JOSEPH DARDAR | JUDGE:<br><br>MAGISTRATE: |

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

NOW COMES plaintiff, Kenai Ironclad Corp., and for its complaint against against CP Marine Services, LLC, Ten Mile Exchange, LLC, Crown Point Ventures, LLC, Dardar Investments, LLC, and Joseph Dardar personally, and represents as follows:

PARTIES TO THE ACTION

1.

Plaintiff Kenai Ironclad Corp. ("Kenai") is a foreign (non-Louisiana) corporation organized pursuant to and existing under the laws of the State of Texas, domiciled in the State of Texas at 10132 Long Rifle Drive, Fort Worth, Texas, maintaining principal places of business both in the State of Texas and the State of Alaska. At all times material plaintiff, Kenai, was and is the owner of the vessel M/V IRON DON, a vessel which was at all times present in this judicial district.

2.

Named defendants herein are the following entities:

(1) CP MARINE SERVICES LLC, ("CP Marine") is a Louisiana limited liability company, organized under the laws of the State of Louisiana, authorized to do and

1

doing business within this judicial district with its domiciliary address and principal place of business located at 4881 Everard Street, Marrero, Louisiana 70072;

(2) TEN MILE EXCHANGE LLC, ("Ten Mile"), is a Louisiana limited liability company, organized under the laws of the State of Louisiana, authorized to do and doing business within this judicial district with its domiciliary address and principal place of business located at 4881Everard Street, Marrero, Louisiana 70072;

(3) CROWN POINT VENTURES, LLC., ("Crown Point"), is a Louisiana limited liability company, organized under the laws of the State of Louisiana, authorized to do and doing business within this judicial district with its domiciliary address and principal place of business located at 4881 Everard Street, Marrero, Louisiana 70072;

(4) DARDAR INVESTMENTS, LLC., is a Louisiana limited liability company, organized under the laws of the State of Louisiana, authorized to do and doing business within this judicial district with its domiciliary address and principal place of business located at 4881 Everard Street, Marrero, Louisiana 70072; AND

(5) JOSEPH DARDAR, upon information and belief, a person of the full age of majority and a resident of the state of Louisiana, at all times herein the sole member/manager of Dardar Investments, LLC, who has filed documents with the Louisiana Secretary of State listing his residence address at 4881 Everard Street, Crown Point, Louisiana 70072, upon information and belief, the same address as for each of the LLCs listed above all of whom he has officer status/managerial status with.

3.

The above and foregoing defendants, all domiciled at the same address, together represent a web of interrelated LLCs all operating out of the same location, with same management structure and employees, under common control, the operations of which are all directed by defendant herein, Joseph Dardar. It is alleged that these entities all constitute a single business enterprise under Louisiana law. *See Green v. Champion Is. Co.*, 577 So.2d 249 (La. App. 1 Cir.), writ denied, 580 So.2d 669; *Duhon v. Petro"E," LLC.*, 251 So.3d 481 (La. App. 3 Cir. 07/11/2018).

JURISDICTION AND VENUE

4.

Original subject matter jurisdiction exists under this Court's general maritime jurisdiction, 28 U.S.C. § 1333, because the events described below include repairs and alterations to a vessel,

a traditional maritime activity, conversion and unlawful arrest of a vessel which occurred on the navigable waters of the United States, and which involves alleged contracts for the charter hire of maritime vessels, a marine contract. In addition, this Court has supplemental jurisdiction over the remaining state law claims.

5.

Personal jurisdiction against all defendants exists because the incidents made basis of this suit occurred in the state of Louisiana and within its territorial waters, and within this Judicial District.

6.

Venue is proper under 28 U.S.C. 1391(b) for the same reasons as set forth above, the vessel to which the repairs were done and that was arrested and/or converted was, at all times material, located within this judicial district, the contracts at issue and all of the actions set out herein occurred on our about defendant's principal place of business located at 4881 Everard Street, Marrero, Louisiana 70072, a location wholly within the confines of the Eastern District of Louisiana.

GENERAL ALLEGATIONS

7.

At all pertinent times plaintiff, Kenai, owned and presently owns the U.S. Flagged Vessel M/V IRON DON, a vessel undergoing a conversion from an offshore supply vessel to a vessel purposed for fishing salmon in the coastal waters off Alaska. From the outset, plaintiff Kenai made clear to defendants that time was of the essence in that Kenai had secured a charter for the M/V Iron Don that required her to be fully operational and on charter no later than June 20, 2019. For

this to happen the vessel had to be in Seattle, Washington no later than mid-May, 2019 for additional work installing RSW Units tanks on the vessel before finally mobilizing her to Bristol Bay, Naknek, Alaska by June 19, 2019.

8.

On or about December 13, 2018, one of the directors of Kenai Ironclad Corp., Levi Adler, spoke with Joseph Dardar about performing some work on the M/V Iron Don to accomplish her repurposing. During this conversation Joseph Dardar held himself out as a manager and/or officer of defendant CP Marine. Upon information and belief, he is.

9.

In that discussion, Kenai Ironclad made clear to Mr. Dardar that Kenai was facing time constraints so it could get its vessel to Alaska to work during the salmon season. Kenai further explained to Mr. Dardar that a principal cause or consideration for them selecting one shipyard over another was because Kenai needed to have the M/V Iron Don in a yard that would allow its employees to perform work simultaneously on the vessel and would allow Kenai employees to live aboard the vessel, a necessary arrangement to keep costs down for Kenai since their employees were remote, and since the work could be completed quicker if the Kenai crew were present.

10.

In order for the time frame to be met, and Kenai to meet its obligations to its customer and charterer, Kenai would have to be able to work at the same time that CP Marine was performing work on the keel and hull of the vessel. Mr. Dardar on behalf of CP Marine agreed. This part of the agreement was a material term without which CP Marine's services would not have been considered as an option.

11.

At all times material CP Marine knew, that time was of the essence for work on the M/V Iron Don because the vessel needed to be converted promptly so it could make the trek through the Panama Canal to the Pacific Northwest to work during the 2019 season, which starts on roughly June 20TH.

12.

On or about December 14, 2018, defendant Mr. Dardar sent a quotation to Kenai proposing charges to move the M/V Iron Don from Bollinger Larose Safe Harbor to the CP Marine Services Dock in Marrero, Louisiana. The quotation did not come from CP Marine directly, but rather from defendant "*Ten Mile Exchange, L.L.C*." but was signed by Mr. Dardar in his stated capacity as "Partner" of that entity. On that quotation Mr. Dardar listed his email address as jdardar@cpmarinellc.com and the telephone number listed is the same number for CP Marine, who he has also referred to himself as a partner in.

13.

On or about December 20, 2018 the M/V Iron Don was moved to CP Marine's facility by a vessel owned by Ten Mile. Ten Mile invoiced Kenai for the transport, a flat rate charter hire charge (Invoice 7640) which Kenai timely paid.

14.

Over the course of the last ten days of December, 2018 employees of Kenai worked on the vessel, taking up residence on it as contractually agreed to with CP Marine. At all times material CP Marine was aware that Kenai employees were working and living aboard the M/V Iron Don.

This arrangement continued, without objection and with the assent of CP Marine and Mr. Dardar as part of the contract between them. through the end of December, through the entire month of January, 2019, and into February of 2019, specifically until President's day, 2019, February 18, 2019.

15.

Over the course of January 2019, CP Marine Services and Kenai Ironclad worked simultaneously on the vessel, and Kenai Ironclad timely paid in full all invoices as received from CP Marine.

16.

On or about January 31, 2019, Kenai began to notice billing and work discrepancies as well as perceived inadequacies in the plate welding quality and other issues with the work performed by CP Marine Services on the vessel. One of Kenai's directors, Austin Adler, is a professional welder. Upon information and belief, certain of the welds are or may be insufficient.

17.

From the outset it was verbally conveyed to Kenai that CP Marine would fully warrant its work. On or about February 13, 2019, CP Marine invoiced Kenai, for certain labor costs as a lump sum. By email dated the same day Kenai requested two things: (1) A breakdown of the labor charges and (2) a copy of the promised written guarantee/Warranty on CP Marine's work.

18.

On or about February 15, 2019, representatives of Kenai discussed the issues having to do with the charges in a conference call with CP Marine (Joseph Dardar and BJ Creppel). Mr. Dardar

again represented that the work was fully guaranteed and reiterated that should there be any issues with any of the work performed, that CP Marine would remediate any defective work, something that had been promised before but that Kenai was doubtful would be occasioned without such a guarantee in writing. Kenai again reiterated a demand for a written guarantee. *See* Exhibit "A" attached hereto and incorporated herein by reference.

19.

By February 18, 2019, Kenai Ironclad principals had multiple conversations with CP Marine Services, and it was made clear that CP Marine Services would not honor its prior promise for a written work guarantee. At this time, Kenai began considering other facilities where the repairs to the M/V Iron Don could be completed.

THE EVENTS OF FEBRUARY 18, 2019, PRESIDENT'S DAY

20.

In apparent retribution for Kenai Ironclad's questioning of CP Marine's work and demand for a written guarantee, which had been previously agreed-to, Joseph Dardar, had all Kenai Ironclad employees forcibly evicted from the M/V Iron Don (*where they had by agreement taken up residence*) and from the facilities where they were working as part of the agreement between Kenai and CP Marine. Notice of this came by email a copy of which is attached hereto as Exhibit "B" and is incorporated herein by reference as if pleaded herein *in extenso*.

21.

As was mentioned above, up until this point, Kenai principals and employees had been residing on the M/V Iron Don so they could perform work, supervise additional work being performed, keep to the schedule, and avoid costs of living elsewhere. This was known by, and

negotiated with, and part of the agreement reached CP Marine beforehand, and CP Marine had agreed to this as a condition of doing the work.

22.

In addition to the email sent, defendant Joseph Dardar caused to be filed with the Jefferson Parish Sheriff's Office a police report wherein, according to the report, Mr. Dardar informed the responding officer that the reason for the eviction was due to non-payment and for the additional reason that the vessel was being moved into the water from drydock.

23.

The demand for immediate payment came after Mr. Dardar was asked for a written guarantee. President's day was a banking holiday. Despite the confrontation with CP Marine, and as soon as practicable in an effort to resolve the dispute, CP Marine Services paid all invoices – over $50,000 – via wire even though the invoices were in part disputed and even though with the removal of Kenai's crew, Mr. Dardar caused, and CP Marine breached the agreement it had with Kenai.

24.

CP Marine Services refused to work on the vessel. Despite Mr. Dardar's representations to Kassie Lyn Freeney, a Jefferson Parish Deputy Sherriff, that the eviction was predicated on safety concerns having to do with the vessel being placed into the water on February 18, CP Marine did not actually put the MV Iron Don into the water until February 28, 2019, some ten calendar days later.

<u>EVENTS FOLLOWING PRESIDENT'S DAY AND LEADING UP TO
CP MARINE'S UNLAWFUL DETENTION AND CONVERSION OF THE
M/V IRON DON</u>.

25.

Subsequent to February 18, 2019, CP Marine knowingly and intentionally refused to perform timely work on the M/V Iron Don, despite knowing Kenai's time constraints and despite having been paid in full. In addition, CP Marine Services has further refused to allow Kenai employees and principals onto the vessel – much less work on the vessel, all in violation of the contract it entered into with Kenai. Defendant, Joseph Dardar, in his capacity as an officer/director of CP Marine has expressly disallowed any presence or work on the vessel outside of CP Marine Services' ordinary working hours, again in violation of the terms agreed to at contract inception.

26.

The effect of CP Marine's acts has been to delay and thus imperil the target date for the M/V Iron Don to reach the Pacific Northwest, making it more likely than not that the vessel M/V Iron Don will miss her date to begin its charter.

27.

On or about February 22, 2019, Kenai paid the sum of $21,435 to CP Marine to resolve all outstanding invoices. Kenai remitted the funds by check on February 27, 2019, and the next day, funds were withdrawn from Kenai Ironclad's bank account. Proof of this was sent to Mr. Dardar.

28.

The delays to the work progress occasioned thus far by the acts of CP Marine and those for whom it is responsible has rendered timely performance under the charter Kenai has with its customer impracticable. In addition, during the time period between February 18, 2019 and

February 27, 2019 Kenai incurred consequential damages as it was paying to house its employees offsite in addition to incurring additional expenses relative to CP Marine's breach of the terms and conditions of the contract it entered into originally.

29.

Kenai as plaintiff alleges that at all times material the actions taken by Joseph Dardar, both in his individual capacity and as a representative of CP Marine were in bad faith.

### THE DEFACTO ARREST AND WRONGFUL CONVERSION OF THE M/V IRON DON BY CP MARINE SERVICES AND MR. DARDAR

30.

Despite full payment, on February 28, 2019 CP Marine and Mr. Dardar informed Kenai that it would not be allowed to move the M/V Iron Don. In so doing, CP Marine Services constructively, wrongfully arrested the M/V Iron Don without using a judicial process and without a lawful right to do so and engaged in maritime conversion.

31.

From February 28, 2019 until March 11, 2019 CP Marine and Mr. Dardar wrongfully exercised dominion, ownership and control over the M/V Iron Don and deprived the lawful owner of the vessel, Kenai, from exercising its lawful rights as owner thereby causing damage to Kenai for which it is entitled to be compensated under law.

32.

While Kenai contends that the actions of Mr. Dardar and CP Marine were in bad faith, Mr. Dardar and CP Marine acted without court approval and thus no showing of bad faith is required relative to Kenai's claim for wrongful conversion of marine assets.

33.

At all times material, the vessel M/V Iron Don was located on navigable waters within the jurisdiction of this Court.

34.

Ultimately, Kenai contracted with a separate shipyard to complete the work on the M/V Iron Don as CP Marine Services was both unwilling and unable to perform the work and honor the terms of the agreement as originally reached.

35.

On March 5, acting at owner's request, this shipyard, Tom's Marine Salvage sent its tug, the M/V Super T, to collect the M/V Iron Don and move it from CP Marine's facility to Tom's Marine Salvage's yard where once again repairs and the repurposing of the vessel could take place.

36.

Upon observing Kenai's attempt to exercise control over the M/V Iron Don, defendant, Joseph Dardar, at the helm of his tug the M/V Aunt Di, knowingly and intentionally rammed the M/V Super T as well as the M/V Iron Don, in order to, and with the effect of, preventing the M/V Iron Don leaving. Upon information and belief, damage was occasioned both to the M/V Iron Don and the vessel M/V Super T. Further on information and belief, personal injuries were sustained by at least one member of the crew of the M/V Super T.

37.

In addition, subsequent to the ramming of the Super T and the M/V Iron Don with the Aunt Di, CP Marine Services blockaded the M/V Iron Don in using other vessels within the control of

Mr. Dardar or the individual companies names herein, all of which are alleged to be a single business enterprise with defendant, CP Marine. By way of example, upon information and belief the vessel Aunt Di is either owned by Mr. Dardar individually or by Ten Mile.

38.

Attached hereto and incorporated herein by reference is a copy of Invoice 7886 dated the day after the ramming referenced above, March 6, 2019, where Joseph Dardar now apparently acting on behalf of Ten Mile Exchange, LLC as a subcontractor presumably of CP Marine Services, LLC, generated an invoice back-charging vessel owners, Kenai, for the detention of their own vessel. These alleged charges, which Kenai maintains they are not liable for, was at the request of Joseph Dardar and not with owner's consent or assent.

39.

Kenai maintains that the invoice submitted by Ten Mile at the request was in bad faith and was a contrivance to give color to CP Marine's claims that there were monies outstanding.

KENAI'S CLAIMS

Claim 1 – Breach of Contract

40.

The actions of CP Marine Services in evicting Kenai Ironclad, in inadequate workmanship, in overcharging Kenai Ironclad for work performed, in dilatory performance, and in other specifics including those described above constitute breach of contract with Kenai.

41.

CP Marine Services breached the terms and conditions of the contract it entered into with Kenai as owners of the M/V Iron Don and is as such indebted to Kenai for such damages as are reasonable in the premises as a result of this breach, including lost revenue and delay damages, damages for repairs and consequential damages relating to the costs of housing and feeding its employees off-site during the period of time they were excluded from the vessel as well as other damages pled hereinbelow.

<u>Claim 2 – Wrongful Arrest and Conversion of M/V Iron Don</u>

42.

The actions of Joseph Dardar and CP Marine Services in detaining the vessel without lawful right to do so, in ramming and blockading the vessel, and in otherwise denying Kenai access to their vessel the M/V Iron Don constitute an intentional wrongful / unlawful seizure, marine conversion, and/or marine trespass to chattel.

43.

The actions of Joseph Dardar and CP Marine Services constitute wrongful arrest of the M/V IRON DON and under Maritime Law plaintiff Kenai is entitled to and hereby does assert a claim for damages relating thereto seeking damages for conversion including but not limited to damages in the nature of loss of use and or demurrage, costs, both foreseeable and unforeseeable damages and punitive damages.

<u>Claim 3 – Declaratory Judgment</u>

44.

Kenai Ironclad further moves this Court for a declaration under the Declaratory Judgment Act, 28 U.S.C. 2201, that CP Marine Services' and Joseph Dardar's constructive arrest of the M/V Iron Don was wrongful. Plaintiff seeks a declaration as well from this honorable Court that all charges relating to the repair of the vessel have been paid in full and that no further invoices are due and outstanding to any of the named defendants herein.

### Claim 4 – Tortious Interference with Contractual Relations

45.

Plaintiff, Kenai, incorporates by reference all act facts pleaded herein concerning the actions of Joseph Dardar and asserts, that Joseph Dardar acted intentionally using his position as an officer / partner / member of the defendants to induce CP Marine Services, LLC to breach its contract with Plaintiff, Kenai.

### RELIEF SOUGHT

46.

Kenai Ironclad Corp. asks this Court for an award of monetary damages from defendants, and each of them for the actions described above, including:

(A) The cost of delay in the IRON DON missing its charter start date in the Pacific Northwest;

(B) The costs Kenai Ironclad has incurred and will incur in accelerating the completion of the repairs to the IRON DON and steaming to the Pacific Northwest at an accelerated pace, burning significantly more fuel, in an effort to mitigate its damages;

(C) The difference between the invoices charged to Kenai Ironclad and the amounts actually owed and reasonable, but overpaid by Kenai Ironclad;

(D) Damages for the inadequate workmanship performed by CP Marine Services;

(E) Hotel and ancillary costs occasioned by CP Marine Services' constructive arrest / conversion of the vessel M/V Iron Don, requiring Kenai Ironclad principals and employees to find other living accommodations;

(F) Attorneys' fees and costs to regain access to the M/V IRON DON, which were occasioned by the wrongful arrest / conversion; and

(G) Punitive damages under general maritime law for CP Marine Services' and Joseph Dardar's egregious, willful and unlawful conduct as described above.

**WHEREFORE**, plaintiff, Kenai Ironclad Corp., prays for judgment in its favor over and against the defendants herein, and each of them, awarding plaintiff damages as above, together with all costs, legal interest, attorney's fees and all other equitable relief as this honorable Court deems just and proper from this court sitting in equity.

Respectfully submitted:

**BOHMAN | MORSE LLC**

/s/Martin S. Bohman
MARTIN S. BOHMAN T/A (#22005)
HARRY E. MORSE (#31515)
650 Poydras Street, Suite 2710
New Orleans, LA  70130
Telephone: (504) 930-4009
E-Mail: martin@bohmanmorse.com
E-Mail: harry@bohmanmorse.com

*ATTORNEYS FOR KENAI IRONCLAD CORP.*