UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KENAI IRONCLAD CORP.                    CIVIL ACTION NO: 19-2799


VERSUS                                  DISTRICT JUDGE
                                        HON. NANNETTE JOLIVETTE BROWN
CP MARINE SERVICES, LLC.,
TEN MILE EXCHANGE, LLC.,                MAGISTRATE JUDGE
CROWN POINT VENTURES, LLC.,             HON. DONNA PHILLIPS CURRAULT
DARDAR INVESTMENTS, LLC.,
and JOSEPH DARDAR
.

## PRE-TRIAL ORDER

1. A final pre-trial conference in this matter will be held on January 27, 2022 at 4:00 p.m.,

   before United States District Judge Nanette Jolivette Brown.

2. **APPEARANCE OF COUNSEL**

   (1) Counsel for plaintiff, Kenai Ironclad Corp:

   Martin Bohman (#22005)
   Harry Morse (#31515)
   **Bohman | Morse, LLC**
   400 Poydras Street, Suite 2050
   New Orleans, Louisiana 70130
   Telephone: (504) 930-4009
   Fax: (888) 217-2744
   martin@bohmanmorse.com
   harry@bohmanmorse.com

   (2) Counsel for defendants, CP Marine Services, LLC and Ten Mile Exchange, LLC:

   Alfred J. Rufty, III
   JONES WALKER LLP
   201 St. Charles Avenue, Suite 5100
   New Orleans, Louisiana 70170-5100
   Telephone: (504) 582-8547
   Fax: (504) 589-8457
   arufty@joneswalker.com

3.  **DESCRIPTION OF PARTIES**

    (1) *Plaintiff, Kenai Ironclad Corp.*

Plaintiff, Kenai Ironclad Corp ("Kenai") is a family-owned Texas company formed in 2018 by Levi, Austin, and Amy Adler. Although domiciled in Texas, Kenai's principal place of business is in Kenai, Alaska where the family operates a salmon fishing vessel, the M/V Iron Don. The M/V Iron Don, the vessel at issue herein that was repaired, in part, at defendant's facility in Louisiana, is a repurposed offshore supply vessel that Kenai acquired in Louisiana from Grand Isle Shipyard, formerly known as the GIS Storm. The home port for the vessel M/V Iron Don is Bristol Bay, Naknek, Alaska. Kenai as a startup company, has one vessel, the M/V Iron Don, and one client, Ocean Beauty Seafood, for whom the vessel stays under charter during salmon fishing season.

    (2)      *Defendants, CP Marine Services, LLC and Ten Mile Exchange, LLC:*

Defendant, CP Marine Services, LLC, is a Louisiana company, which owns and operates a shipyard in Marrero, Louisiana.  Ten Mile Exchange, LLC is a Louisiana company, which operates a fleeting facility adjacent to the CP Marine shipyard in Marrero, Louisiana.

4.  **JURISDICTION**

This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This Court has original jurisdiction under 28 U.S.C. § 1333 and the General Maritime Law as the principal claim involve repairs and alterations to a vessel in navigation as well as claims for conversion and unlawful arrest and detention of a vessel in navigable waters. Plaintiff maintains that jurisdiction over any remaining state law claims is vested in this Court by with of supplemental jurisdiction.

5. **PENDING MOTIONS**

Plaintiff, Kenai Ironclad Corp. anticipated filing motions to strike any witnesses not properly identified or listed on defendant's witness lists or discovery responses.

6. **CONTENTIONS OF THE PARTIES**

(1) ***CONTENTIONS OF PLAINTIFF, KENAI IRONCLAD CORP***:

Late in 2018 Kenai acquired a supply vessel here in Louisiana from Grand Isle Shipyard, the GIS Storm with the idea that it would be repurposed for salmon fishing. Kenai then entered into a Time Charter with Ocean Beauty Seafoods that would, assuming the vessel was operational and ready to sail by a time certain, provide a steady stream of income year to year during salmon fishing season.  Driving the time frame was not just the Charterer, Ocean Beauty, but also the nature of the salmon fishing season and its inherent duration. The GIS Storm was renamed the M/V Iron Don after Levi and Austin's grandfather, a steel foundry foreman.

When the parties first began discussing repairs to the vessel now known as the M/V Iron Don, it was made clear by Kenai and acknowledged by defendants that the vessel was committed to a time charter and needed to be in Naknek Alaska by June 25, 2019. This is turn required the M/V Iron Don to transit the Panama Canal on schedule and be in Seattle no later than mid-May, 2019. The reason this is material is because the vessel needed extensive work when Kenai acquired it, some of which Kenai intended to do on their own working in parallel with whomever was retained to do the hull blasting and painting, etc. This in turn required an agreement to allow Kenai employees to be on premises working (hot work) in the contractor's shipyard. Defendants agreed.

To be clear, the principal reason that Kenai chose CP Marine Services and their affiliated companies (Ten Mile Exchange, etc.), was because of the representations made by defendants that work could be done by Kenai in parallel. Ten Mile Exchange, one of the affiliated companies,

transported the vessel to CP Marine's yard at Crown Point. Ten Mile Exchange utilized its vessel the M/V Aunt Di and a barge, the M/V Rougarou, the same vessels used to detain the vessel and prevent it from leaving the shipyard later in March of 2019.

On January 8, 2019 Kenai was provided a Quote for "*Repair Labor for Steel Work, Blast Prime and Paint*" in the amount of $78,880.50.  Subsequently, Kenai received an additional quote dated January 15, 2019 in the amount of $32,100 for additional work. Kenai was directed to contact Joseph Dardar or B.J. Creppel, employees and managers of the two defendants, for questions about the quote(s). The Work commenced as agreed with Kenai employees living aboard the vessel and working. All was well until two things happened: First, defendants started tendering large invoices without proper breakdown of time and materials, and (2) Kenai became concerned that CP Marine's work was substandard, specifically they became concerned about the quality of the hull coating and its application and the sufficiency of the welding.

There was a verbal agreement by CP Marine Services that their work would be warranted. There were several representations made by employees of CP Marine Services that the warranty would be in writing and provided to Kenai but no warranty was ever provided.

Kenai contends that there is a clear pattern established through emails and other communications that when Kenai would enquire about the warranty and the work provided, including the lack of breakdown in the charges, defendants would respond with unreasonable demands for payment and would threaten to kick Kenai employees out of the yard to frustrate their work. These ongoing actions ultimately culminated in formal written demand for a the warranty that Kenai was assured verbally was present. Rather than provide the warranty in writing defendants, acting through Joseph Dardar, had them removed without notice from the premises (they were living on the M/V Iron Don at the time as agreed) and filing a police report, which

4

resulted in the Jefferson Parish Sheriff's office removing Kenai employees from the premises against their will and denying them access to the vessel.

By way of example, on February 13, 2019 Levi Adler by email questioned one of the invoices and demanded in writing a guarantee/warranty on the quality and repair of the work being done. The next day, on the 14TH defendants through their yard manager BJ Creppel assured Kenai that they would have a written guarantee by the 18TH but none was provided. Kenai will introduce into evidence at trial Levi Adler's email (one of Kenai's principals) from February 18, 2019 explaining why defendant's immediate demands for payment could not be honored (*it was honored the following day, the 19TH, by fed wire once the bank in Anchorage opened*) and again requesting a written guarantee. It was this email that prompted their exclusion from the vessel and the aforementioned police report as well as having Kenai removed from the yard for trespassing, an allegation that was clearly false.

After the invoices were paid, Kenai never received its written guaranty, defendants refused to put the vessel into the water so she could be removed from the premises as demanded until roughly the 27TH of February. During this time, all invoices had been paid, Kenai had been directed to leave the premises and remove all property; yet the vessel remained in dry dock. This caused delay damages to Kenai as they were not able to perform work on the vessel during this time frame and moreover, Kenai had no access to the vessel. To add insult to injury, CP Marine attempted to charge Kenai for the dry-dock while she was detained.

On the 28TH of February, some ten days later, well after final payment of all outstanding charges, the vessel M/V Iron Don was floated and in the water at CP Marine's facility in Crown Point off the intracoastal waterway; however, defendants acting through Joseph Dardar blockaded the vessel without legal right using a hopper barge, the Rougarou. Photographs of the facility taken

by Kenai establish that despite the re-floating of the vessel and the demands to remove the vessel, for several days Kenai continued to be denied access.

On March 5 of 2019 Kenai engaged Tom's Marine & Salvage in Jean Lafitte, Louisiana to move the vessel M/V Iron Don to another facility. At that time, the M/V Iron Don was accessible from the intracoastal waterway. Tom's deployed the M/V Super-T, a vessel in their fleet, to effectuate the transport of the vessel; however, Joseph Dardar, upon seeing that Kenai intended to remove the vessel (which was at this point fully paid for), boarded the M/V Aunt Di and rammed the M/V Iron Don and the M/V Super-T. At this time, Kenai principals were abord the M/V Iron Don and filmed the incident. Kenai has drone footage of one of CP Marine's principals, Joseph Dardar, boarding the vessel Aunt Di and ramming Kenai's vessel causing damage to her and to the Tom's Marine Services Tug that Kenai had hired to move the vessel. At this point in time, defendants had no legal right to restrain the vessel or deny access to the vessel. Interestingly, defendants then attempted to invoice plaintiff for vessel charges for the M/V Aunt Di and the M/V Rougarou.

**Damages.**

The events which for the basis of the claims by Kenai in this litigation can be separated into three (3) discrete time periods. Chronologically, the first time period starts when the vessel was turned over to defendants and ended roughly with the ramming and blockade of the vessel in March. The second discrete time period starts when the vessel was moved to Tom's Marine and Salvage and the remaining work commenced. The completion date was delated as a result of defendant's actions and the third time period begins when the vessel left Louisiana headed to Seattle and then Alaska to go on charter. By Kenai's account, and the vessel logs support this, the arrival of the vessel was delayed for 23 days resulting in a delay damage claim for lost charter.

That said, Kenai has asserted claims for (1) damages relating to the conversion and illegal arrest of the M/V Iron Don and damage related thereto, (2) delay damages, (3) and damages relative to breach of contract and defective workmanship, etc. The work performed was not timely rendered and in certain material respects it was defective. In Some five months later in October of 2019, the M/V Iron Don was hauled out at a yard in Seattle, Washington – Stabbert Marine and Industrial. The underwater hull system and the condition of the vessel was independently assessed by third parties and photographs were taken establishing the condition of the vessel in October of 2019. The conclusion, objectively reached, was that the paint and blasting performed by CP Marine Services was defective and needed to be replaced.   The damaged claimed by Kenai relative to defective performance are based on the condition of the vessel in October of 2019. Kenai asserts that at all times material defendants knew that their work was substandard and refused to provide Kenai with the promised written warranty for this reason.

At present Kenai calculates its damages as follows:

- 18 missed contract days at $5,700.00 per day gross less expenses under the Time Charter with Ocean Beauty Seafood. This amounts to $63,289.80 calculated as follows: *$5,700 - $1,150/day in crew wages - $33.90/day in insurance costs - $1,000/day in amortized maintenance costs = $3,516.10 per day net x 18 days = $63,289.80*;

- Repairs to the hull as a result of defective blasting, priming, and painting in the amount of $137,734. The estimate was obtained in part in 2021 from Stabbert; however, the author of the estimate, Mr. Brian Galbraith, has testified that the quote was for repairs to the vessel that were necessary in 2019, in other words, the repair costs sought are solely to repair and replace damages that relate to the vessel's condition in October of 2019. In his deposition, Mr. Galbraith conceded that labor and material costs would be higher in 2021 than in 2019 and thus the real repair cost, had the repairs been occasioned in 2019 when the survey was done, would have been 10 to 15% less. Conservatively then the claim here is 162,040 x .85 = $137,724.

- Damages arising from the need to replace struts on the vessel, or $28,800;

- Mooring costs incurred in the amount of $7,395.00 consisting of 51 days at $145.00 per day which the defendant incurred after the vessel was moved to Tom's;

- Crew payment obligations in the amount of roughly $34,000;

- Hotel and Food expenses as the result of the failure to honor the live-aboard agreement.

There are in addition, damages to the hull as a direct result of the ramming of the M/V Iron Don by Mr. Dardar in the Ten Mile Exchange vessel, M/V Aunt Di. There is also a claim for attorney's fees and costs based on defendant's bad faith breach of contract and wrongful arrest of the M/V Iron Don which Kenai intends to establish at trial.

## (2) *CONTENTIONS OF DEFENDANTS, CP MARINE SERVICES, LLC AND TEN MILE EXCHANGE, LLC*:

Contrary to Kenai's claims, CP Marine appropriately performed the limited work that Kenai authorized it to do on the hull of its M/V IRON DON.  Kenai bought the 36-year old supply vessel out of a mothballed fleet on an as-is, where-is basis, intent on converting it into a fish-storage vessel for use in Alaska.  Kenai bought the vessel on the cheap without seeing its underwater hull.

The vessel arrived at the Ten Mile Exchange anchorage, adjacent to CP Marine's shipyard, on December 20, 2018.  Content to wait until after the holidays, Kenai had the vessel shifted to the CP Marine shipyard and put on drydock two weeks later on January 5, 2019.  On drydock, significant wastage was found in the vessel's steel hull.  As a shipyard, CP Marine earns its income by repairing vessels.  CP Marine would have been delighted to fully repair the IRON DON, but Kenai was short on funds and authorized only minimal work.   Due to concerns over cost, Kenai only authorized CP Marine to remove and replace some of the impaired steel.

The authorized work consisted of sandblasting (to the limited extent Kenai would allow), priming and painting the hull; installing struts on the hull; refitting an engine compartment; and

removing and reinstalling certain hatches.  The work was done correctly and in a timely manner, notwithstanding Kenai's interference and dilatory payments.

When, during sandblasting, small holes began to appear in the thinned steel, Kenai's reaction was not to authorize more steel work, but rather to direct CP Marine to reduce or avoid sandblasting in the suspect areas.  Kenai said it just wanted to get through the first fishing season and would then have funds to do more work on the vessel.

Neither CP Marine's quotes nor Kenai's acceptance of them involved any additional terms about time being of the essence (based on a charter commitment in Alaska a full six months later), or anything about an express warranty.  CP Marine certainly did not authorize Kenai to perform its own welding on the vessel, using CP Marine's equipment at the shipyard.  That would have been a liability and insurance nightmare, and no sane company would ever agree to that.  Kenai's contention that there was an oral agreement to this effect is false.

The shipyard recommended that the old paint be sandblasted away completely, for better adherence of the new paint to the hull, but Kenai refused, not wanting to spend the money.  The shipyard also recommended significantly thicker and stronger struts, but again Kenai refused, not wanting to spend the money.  Under the circumstances, there is no chance that CP Marine ever would have entered into a verbal agreement to provide an express warranty regarding how the paint or the struts would hold up over time.

CP Marine did initially permit Kenai's crew to live on the boat during the repairs and to do some of their own minor interior work inside of the vessel.  Kenai abused this privilege. One night in January, CP Marine caught Kenai welding on the vessel, using CP Marine's welding equipment. CP Marine insisted that Kenai stop immediately, and it agreed to do so.

As the work was nearing completion in late February, Kenai was in arrears.  A promised certified check had supposedly been put into the mail but never arrived.  CP Marine advised Kenai that it needed to receive payment in full before the vessel left the yard, which was fully understood by Kenai.  CP Marine completed the work in late February and Required payment before the vessel left.  This is the universal practice of shipyards, and, as stipulated in CP Marine's invoices, payment was due upon each invoice's receipt.  CP Marine further explained that Kenai would have to either pay by wire-transfer (as it had done previously) or wait for a check to fully clear, beyond the date that a check could be canceled.  Kenai nevertheless gave CP Marine an ordinary check on February 26.  CP Marine checked with its bank and was advised that a check could be canceled for up to seven business days after its deposit into CP Marine's account.

On Mardi Gras day (March 5, 2019), before payment had cleared into CP Marine's account, Kenai came to the closed shipyard unannounced to forcibly remove the vessel from the yard. Expecting fireworks, Kenai arranged for a drone to be flying overhead in order to capture the provocative encounter on video.  Kenai's representatives trespassed into CP Marne's private anal and onto its premises; cut lines belonging to CP Marine at CP Marine's dock; and attempted to remove the vessel.  Joseph Dardar, a representative of CP Marine, saw what was happening and blocked the waterway with another vessel.  When Kenai's representatives asked a sheriff's deputy to force CP Marine to release the vessel that day, the deputy instead told them they were trespassing and had to leave.   Just two days later, on March 7, CP Marine advised Kenai that it was free to take its vessel on March 8, the day on which Kenai's check would according to the bank irrevocably clear into CP Marine's account.  Kenai opted to wait four more days and removed its vessel from the shipyard without incident the following Monday.

Kenai's attempt to remove the vessel from the shipyard forcibly involved a breach of the peace and was itself improper.  The delay while CP Marine was awaiting payment was in any event relatively short and inconsequential.  By wiring the funds, Kenai could have avoided the delay entirely.

Kenai's claim for lost income is meritless.  There was contractual deadline for completing the work and no agreement that time was of the essence.  Further, Kenai was free to take the vessel from CP Marine on March 8, 2019.  According to Kenai, the vessel had to be Alaska ready to work by around June 25, 2019, a full 3½ months after it left CP Marine.  Kenai implausibly contends that a few days' delay in leaving the shipyard over the payment dispute caused it to miss its target arrival date by nearly a month.  The timing was, moreover, in Kenai's control; it could've secured the vessel's release immediately by paying by wire-transfer, as it had done previously and as CP Marine requested.  Moreover, after leaving CP Marine, IRON DON went to another shipyard in Louisiana for additional work, including installation of new engines.  While the vessel at that other shipyard, a four-week delay was incurred while awaiting arrival of the new engines.  Additional delays were experienced subsequently after the vessel arrived in Seattle for provisions.  To the extent the IRON DON was late in commencing its fishing in Alaska in July, this was not caused by the brief payment dispute at CP Marine in March.

Kenai also claims entitlement to damages for vessel repairs, to replace struts on the vessel, and to repaint the vessel (blasting, priming and painting) at a cost of $162,040.   Kenai has not documented damage to the struts.  Even if such damage were to exist, it would not reflect defective workmanship by CP Marine.  It would reflect that Kenai ignored CP Marine's recommendation to install thicker and stronger, if more expensive, struts.  Similarly with respect to the paint, Kenai refused CP Marine's recommendation to sandblast away all of the old paint, which would have

improved the longevity of the new paint considerably. With respect to the allegedly defective paint, Kenai plans to fix it by repainting next fall—a full 3½ years after CP Marine painted the vessel.  Kenai's own expert witness, Brian Galbraith of Stabbert Marine, testified in deposition that a paint job on the IRON DON should last about three years.  Because CP Marine's paint job has lasted three years, it has done its job.  When Kenai incurs a painting expense in the fall, it will not represent a loss.  Just a new paint job on an ordinary schedule.

To establish the price of a replacement paint job for the IRON DON's hull, Kenai cites a quotation from Stabbert Marine in Seattle dated September 20, 2021.  There are several problems with this quote. First, it will not apply next fall when Kenai says it will paint its vessel; it does not establish a price in fall 2022.  Second, it is for more extensive work than CP Marine was authorized to do; it is significantly more expensive because it is based on fully sandblasting the vessel, in accordance with the paint manufacturer's specifications.  To ensure proper adhesion of the new paint to the hull, Sherwin-Williams specifies that all old paint must first be removed by sandblasting (a "near white blast"), but Kenai instructed CP Marine (against its recommendation) to perform a much cheaper "commercial blast", which leaves some old paint and rust on the hull.  Inadequate sandblasting, according to Kenai's expert Galbraith, leads to premature delamination (peeling) and rust spots.  These are the very conditions that Kenai claims were prematurely observed on some parts of the hull in Seattle in October 2019.

### 7.  UNCONTESTED MATERIAL FACTS

(1)    Kenai Ironclad Corp is a valid Texas corporation.

(2)    Kenai Ironclad Corp is the owner and operator of the M/V Iron Don.

(3)    At all times material, B.J. Creppel was an employee of CP Marine Services, LLC.

8.  **CONTESTED ISSUES OF FACT**

(1)     Whether the repairs performed by CP Marine Services, LLC to the M/V Iron Don were negligently rendered or constitute defective performance.

(2)     Whether all charges for work performed by defendants were paid for by Kenai.

(3)     When CP Marine received payment from Kenai for the repairs.

(4)     Whether CP Marine had a reasonable concern that Kenai would cancel its check after removing the vessel from the shipyard.

(5)     The terms and conditions of any agreements between plaintiff, Kenai, and the defendants herein.

(6)     Whether and, if so, in what respects either party breached the agreed terms and conditions.

(7)     Whether defendant actions were in bad faith.

(8)      Whether the work legitimately performed at Kenai's request was paid for when the vessel was detained by CP Marine Services;

(9)     Whether any of the parties acted improperly on March 5, 2019, when Kenai sought to forcibly remove the IRON DON from the shipyard.

(10)    The extent of Kenai's damages, if any, attributable to the actions or inactions of either of the defendant.

(11)    The condition of M/V Iron Don's hull.

(12)    Whether Kenai's representatives acted improperly at the shipyard.

(13)    Whether defendants' actions in removing and subsequently denying Kenai access to the vessel were lawful and proper.

(14)    Whether defendants negligently blasted and painted the M/V Iron Don.

(15)    Whether CP Marine's paint job has lasted a reasonable period of time.
(16)    Whether Kenai instructed CP Marine to minimize sandblasting of the hull.

(17)    The condition of the vessel in October of 2019 and the damages related thereto;

(18)     The extent of the delay in the on-charter date with Ocean Beauty Seafoods attributable to the actions of the defendant.

(19)     Whether there was any deadline for completion of repairs and contractual agreement that time was of the essence.

(20)     Whether defendants wrongfully arrested the M/V Iron Don.

(21)     Whether Ten Mile Exchange, LLC is the owner of the vessel M/V Aunt Di, O.N. 590688.

(22)     Whether Ten Mile Exchange, LLC is the owner of the barge "Rougarou".

(23)     Any and all factual issues apparent from or inherent in the pleadings.

(24)     Any and all factual issues addressed or raised in discovery.

(25)     All contested factual issues implicit in the party's summaries of material facts.

(26)     All contested issues of fact implicit in the contested issues of law.

**9.   CONTESTED ISSUES OF LAW**

(1)      The terms of any agreements between the CP Marine and Kenai.

(2)      Whether CP Marine Services and/or Kenai breached the terms of their agreement.

(3)      Whether there was a contractual agreement that time was of the essence.

(4)      Whether defendants rendered defective performance to plaintiff in connection with repairs and work performed on the M/V Iron Don, specifically the work to the hull (blasting and painting), the struts, etc. as set forth in their Quote detailing the scope of work to be performed;

(5)      Whether and, if so, to what extent any warranties were owed in connection with the work done on the IRON DON at the shipyard.

(6)      Whether defendant CP Marine Services breached any warranties in connection with its work on the M/V Iron Don.

(7)      Whether defendants CP Marine Services and/or Ten Mile Exchange are liable to plaintiff, Kenai Ironclad Corporation for its role in the detention of the vessel.

(8)     Whether plaintiff's evidence was sufficient as a matter of law to succeed on the elements of his claims.

(9)     Whether Ten Mile Exchange, LLC or CP Marine Services, LLC., or each of them, is liable for the actions of Joseph Dardar.

(10)    The terms of any agreement between the parties;

(11)    Whether defendants had legal right to detain the vessel M/V Iron Don.

(12)    Whether Kenai had a legal right to remove the IRON DON on March 5, 2019 in the manner attempted.

(13)    What damages – if any – are recoverable by plaintiff, Kenai.

(14)    Whether defendants' actions in detaining the vessel M/V Iron Don were in bad faith and whether they are entitled to consequential damages, including attorneys fees.

(15)    Whether Kenai mitigated its damages, if any.

(16)    Whether defendants mitigated their damages, if any.

(17)    Whether defendants wrongfully arrested the M/V Iron Don.

(18)    Any questions of law implicit in the contested issues of fact.

## 10. EXHIBITS

***Plaintiff's Exhibits List, Kenai Ironclad Corp – The following exhibit list was electronically filed in accordance with the Scheduling Order in force herein on October 13, 2021 [Rec. Doc 60] with the exception of the items in (47) which only became relevant as impeachment after the deposition of Joseph Dardar taken after the deadline.***

(1)     Ten Mile Exchange Job Detail Ticket 14604 dated 12/20/2018;

(2)     Ten Mile Exchange Job Detail Ticket 14856 dated 03/06/2019;

(3)     CP Marine Services, LLC Quote Dated 01/09/2019;

(4)     CP Marine Services, LLC Quote dated 01/15/2019;

(5)     CP Marine Services, LLC Dry Dock Invoice 19-0105-01 dated 01/5/2019;

(6)     CP Marine Services, LLC Invoice # 19-0131-01 dated 01/31/2019;

(7)     CP Marine Services, LLC Invoice # 19-0221-01 dated 02/21/2019;

(8)     CP Marine Services, LLC Invoice # 19-0227-01 dated 02/27/2019;

(9)     CP Marine Services, LLC Invoice # 19-0306-01 dated 03/06/2019;

(10)    Photographs of the vessel M/V Iron Don while blockaded and detained by defendants after payment made (March of 2019);

(11)    Video Drone Footage of the vessel M/V Iron Don while blockaded and detained by defendants after payment made (March of 2019);

(12)    Time Charter and Tender Service Agreement between Kenai Ironclad Corp and Ocean Beauty Seafood, LLC dated October 18, 2018;

(13)    Ten Mile Exchange Quotation dated December 14, 2018 from Joseph Dardar, Partner;

(14)    CP Marine Rate Structure (2019) provided to Kenai Ironclad Corp;

(15)    Email from Gina Taromina to Levi Adler dated December 21, 2018 Re: Invoice 7640;

(16)    Email from Levi Adler to Joseph Dardar dated January 7, 2019 concerning bids for work on the M/V Iron Don;

(17)    Email from Gina Taromina at CP Marine Services, LLC dated January 8, 2019 forwarding Invoice 19-0105-01;

(18)    Email from Gina Taromina to Levi Adler dated January 28, 2019;

(19)    Email from Levi Adler at Kenai Ironclad Corp to Gina Taromina requesting breakdown of charges and written guarantee dated February 13, 2019;

(20)    Email from Gina Taromina to Levi Adler dated February 18, 2019 at 6:56pm in reply to Levi Adler's of same date at 6:53pm (Single Exhibit);

(21)    Correspondence from CP Marine Services, LLC to Kenai Ironclad Corp ("Removal Letter") dated February 18, 2019;

(22)    Email from Austin Adler Dated February 25, 2019 Re: Invoice #19-0221-01 including email chain (Single Exhibit);

(23)    Email from Gina Taromina dated February 27, 2019 re: Invoice 19-0227-01;

(24)    Email from Gina Taromina Re: "invoices for Wire Payment" CPM Invoice 19-0306-01; TME Invoice 7886 dated March 6, 2019;

(25)    Various Photographs of the hull and welds on the M/V Iron Don produced as Kenai 055-075, and Kenai 100-148, inclusive, in discovery;

(26)    Email to Michael Dye Requesting Immediate Wire Payment of Invoice 19-0207-01 dated 02/19/2019;

(27)    Email to Michael Dye dated 02/22/2019 requesting disbursement for CP Marine Invoice 19-0221-01 dated 02/21/2019;

(28)    Stabbert Marine & Industrial Quote for paint report to the M/V Iron Don dated 09/20/2021;

(29)    Sherwin Williams Report dated October 25, 2019 regarding paint on M/V Iron Don with estimated materials costs for repairs.

(30)    Video (2 in total) (IMG_4976 and IMG_4981) showing bottom condition and paint adhesion on M/V Iron Don;

(31)    Vessel Rough Logs for M/V Iron Don dated July 2, 2019 through November 1, 2019, Inclusive;

(32)    Engineer's Logs for M/V Iron Don dated July3, 2019 through Sept 30, 2019, inclusive;

(33)    Sherwin-Williams Invoice 3540-1 showing materials for hull coating system purchased by Kenai in January of 2019 (2 pages);

(34)    Sherwin-Williams Invoice 5624-1 showing materials purchased by Kenai in April of 2019 (1 page);

(35)    Ocean Beauty Seafoods, LLC "Fisherman Statement" for account of Iron Don for dated 1/1/2019 through 10/14/2019, inclusive;

(36)    Ballard Oil Invoice IN-311083 dated 06/24/2019 relative to refueling of M/V Iron Don in Seattle after Transit from Louisiana;

(37)    C-Port/Stone, LLC Invoice number C141441-IN dated May 09, 2019 for account of Kenai Ironclad Corp fuel in Louisiana prior to departure to Seattle;

(38)    Specification Sheet for Cummins KTA19-G4;(*Objection. Defendants*.)

(39)    Cummins Engine Company "Marine Performance Curve" sheet for engine KTA19-M3; (*Objection. Defendants*)

(40)    Documents establishing transit route from Louisiana to Seattle, May-June 2019; (*Objection. Defendants*)

(41)    Payroll Records – Kenai Ironclad Corp (2019);

(42)    "Storm Project" Material and Transit Timeline as presented to Ocean Beauty Seafoods, LLC in 2018; (*Objection. Defendants*)

(43)    Cancelled Checks # 2583 & 2584 to Tom's Marine & Salvage;

(44)    Check # 2582 to Don Collier for services to M/V Iron Don dated April 29, 2019; (*Objection. Defendants*)

(45)    Any demonstrative evidence that may be necessary;

(46)    Any document obtained through subsequent discovery to the extent the Court's allows;

(47)    Any document necessary to impeach or rebut the testimony of any witness:

   A.  Video fb7d1f56cd44464a-video.mov (produced at Corporate Deposition of Kenai Ironclad Corp);

   B.  Iron Don Girth Belt Legend dated 7 January, 2019 (Mark Shiffer Surveyors, Inc.)

   C.  Mark Shiffer Surveyors, Inc. Trip Survey (Report No. 19054) dated 7 May, 2019;

   D.  Mark Shiffer Surveyors, Inc. Condition and Valuation Survey (Report No. 20065) dated 4 May, 2020.

### *Defendant's Exhibits List, CP Marine Services, LLC and Ten Mile Exchange, LLC*

(1) Ten Mile Exchange Job Detail Ticket 14604 dated 12/20/2018;

(2) Ten Mile Exchange Job Detail Ticket 14856 dated 03/06/2019;

(3) CP Marine Services, LLC Quote Dated 01/09/2019;

(4) CP Marine Services, LLC Quote dated 01/15/2019;

(5) CP Marine Services, LLC Dry Dock Invoice 19-0105-01 dated 01/5/2019;

(6) CP Marine Services, LLC Invoice # 19-0131-01 dated 01/31/2019;

(7)   CP Marine Services, LLC Invoice # 19-0221-01 dated 02/21/2019;

(8)   CP Marine Services, LLC Invoice # 19-0227-01 dated 02/27/2019;

(9)   CP Marine Services, LLC Invoice # 19-0306-01 dated 03/06/2019;

(10)   Photographs of the vessel M/V Iron Don (March of 2019); (*Objection vague. Kenai cannot interpose a valid objection as the designation does refer to specific photographs*).

(11)   Video Drone Footage of the vessel M/V Iron Don (March of 2019);

(12)   Ten Mile Exchange Quotation dated December 14, 2018;

(13)   Email from Gina Taromina to Levi Adler dated December 21, 2018 Re: Invoice 7640;

(14)   Email from Levi Adler to Joseph Dardar dated January 7, 2019 concerning bids for work on the M/V Iron Don;

(15)   Email from Gina Taromina at CP Marine Services, LLC dated January 8, 2019 forwarding Invoice 19-0105-01;

(16)   Email from Gina Taromina to Levi Adler dated January 28, 2019;

(17)   Email from Levi Adler at Kenai Ironclad Corp to Gina Taromina requesting breakdown of charges and written guarantee dated February 13, 2019;

(18)   Email from Gina Taromina to Levi Adler dated February 18, 2019 at 6:56pm in reply to Levi Adler's of same date at 6:53pm (Single Exhibit);

(19)   Correspondence from CP Marine Services, LLC to Kenai Ironclad Corp February 18, 2019 (removal letter);

(20)   Email from Austin Adler Dated February 25, 2019 Re: Invoice #19-0221-01 including email chain;

(21)   Email from Gina Taromina dated February 27, 2019 re: Invoice 19-0227-01;

(22)   Email from Gina Taromina Re: "invoices for Wire Payment" CPM Invoice 19-0306-01; TME Invoice 7886 dated March 6, 2019;

(23)    Email to Michael Dye Requesting Immediate Wire Payment of Invoice 19-0207-01 dated 02/19/2019;

(24)    Drawings of struts proposed by CP Marine; (*Objection. Said document(s) has not been produced in discovery*)

(25)    Sherwin-Williams specifications for the paint applied to the M/V Iron Don;

(26)    Email to Michael Dye dated 02/22/2019 requesting disbursement for CP Marine Invoice 19-0221-01 dated 02/21/2019;

(27)    Photographs of the M/V Iron Don exchanged between the parties;

(28)    Ten Mile Exchange Quotation dated December 14, 2018;

(29)    Correspondence from CP Marine Services, LLC to Kenai Ironclad Corp ("Removal Letter") dated February 18, 2019;

(30)    Email to Michael Dye Re: wire payment of Invoice 19-0207-01 dated 02/19/2019;

(31)    Email to Michael Dye dated 02/22/2019 requesting disbursement for CP Marine Invoice 19-0221-01 dated 02/21/2019;

(32)    Any demonstrative evidence that may be necessary;

(33)    Any document necessary to impeach or rebut the testimony of any witness;

(34)    Any other records of payments made by Kenai to the defendants (to the extent, if any, not detailed above;

(35)    Photographs of the M/V IRON DON and the surroundings;

(36)    Drawings of recommended strut design; (*Objection. Said document(s) has not been produced in discovery*)

(37)    IRON DON vessel logs;

(38)    IRON DON engine logs;

(39)    Sherwin-Williams product information and specifications for the paint bought by Kenai for the IRON DON;

(40)    CP Marine Rate Structure documents;

(41)    CP Marine invoices to Kenai;

(42)   Ten Mile Exchange invoices to Kenai;

(43)   AIS position data for IRON DON and related diagrams and photographs; (*Objection, relevance and foundation*)

(44)   Overhead photograph of Larose Safe Harbor; (*Objection. Said document has not been produced in discovery. Additionally, plaintiff objects on relevance grounds*).

(45)   Audio gauge readings of IRON DON hull.

## 11. DEPOSITION TESTIMONY

A.   ***Plaintiff, Kenai Ironclad Corp:***

Plaintiff intends to use the deposition of Mr. Brian Galbraith in lieu of live testimony at trial.

B.   ***Defendants, CP Marine Services, LLC and Ten Mile Exchange, LLC:***

Defendants may use depositions of the following witnesses at trial:

(1)   Kenia Ironclad;
(2)   Levi Adler;
(3)   Brian Galbraith, Stabbert Marine;
(4)   Jeff Adler

## 12. DEMONSTRATIVE EXHIBITS FOR OPENING STATEMENTS AND/OR CLOSING ARGUMENTS

Defendants may use blow-ups of exhibits or other demonstrative aids during trial.

## 13. WITNESSES

***Plaintiff's "Will Call" Witness List, Kenai Ironclad Corp:***

(1) Levi C. Adler
Kenai Ironclad Corp.
10132 Long Rifle Dr.
Fort Worth, Texas 76108

*Mr. Levi Adler a director and Chief Financial Officer of Kenai. Mr. Adler offer testimony concerning the representations made concerning the services to be provided by defendants, the nature and scope of the proposal and any agreements reached, as well as the damages and other factual aspects of the claims asserted.*

(2) Austin J. Adler
    Kenai Ironclad Corp.
    1131 Redoubt Ave
    Kenai, Alaska 99611

*Mr. Austin Adler is the Chief Operating Officer of Kenai. Mr. Austin Adler will testify concerning the representations made concerning the services to be provided by defendants, the events that occurred on and surrounding the M/V Iron Don while she was at the defendant's facilities including the sufficiency of the repairs, the detention of the vessel, and the issues relating to damages to the vessel.*

(3) Jonathan Tingley
    42318 Old Sterling Hwy
    Archer Point, Alaska 99556

*Generally, Mr. Tingley will testify concerning the services performed to the M/V Iron Don the events that occurred on and surrounding the M/V Iron Don while she was at the defendant's facilities and can address other factual aspects of the case. Mr. Tingley was also the pilot of the drone used to monitor and record certain activities and acts taken by representatives of defendants.*

(4) Jeffery Adler
    3709 Ridge Road
    Willow Park, Texas 76108

*Jeff Adler will testify concerning the services performed to the M/V Iron Don the events that occurred on and surrounding the M/V Iron Don while she was at the defendant's facilities.*

(5) Mr. Tom Dinh
    Engineer
    Tom's Marine & Salvage 3008 Jean Lafitte Blvd.
    Jean Lafitte, Louisiana 70067

*Mr. Dinh will offer testimony concerning the events surrounding the attempted movement of the M/V Iron Don from the defendants' facilities and the ramming of his vessel Super-T and the M/V Iron Don while piloted by Joseph Dardar.*

(6) Mr. John Phillips
    Tom's Marine & Salvage
    3008 Jean Lafitte Blvd.
    Jean Lafitte, Louisiana 70067

*Mr. Phillips will offer testimony concerning the events surrounding the attempted movement of the M/V Iron Don from the defendants' facilities and the ramming of the M/V Super-T and the M/V Iron Don while piloted by Joseph Dardar.*

(7) Mr. Samuel D. Schuetz
The Sherwin-Williams Company
Marine Tech & Protective Coatings
2940 6TH Avenue South
Seattle, Washington 98134

Mr. Schuetz was present at the October 2019 examination and condition survey of
the hull system on the M/V Iron Don. As a percipient witness, Mr. Schuetz has
information relating to the condition of the vessel's hull as it existed in 2019. He is
also identified for purposes of Rule 26(a)(2)(C) as an expert in the field of paint
and marine coatings, he will offer testimony pertaining to defective application of
the marine coating system based not only on his direct examination or ground level
involvement at the time of haul out in October of 2019 at the Stabbert Shipyard in
Seattle some 5 months after the coatings were applied by defendants, but will also
offer expert opinion testimony consistent with his qualifications regarding same,
concerning the cause of the extensive corrosion and areas of delamination he
directly observed (negligent or substandard preparation (e.g. blasting) and
application of the marine coasting systems), and will testify to facts and opinions
concerning the cost of repairs and process needed to repair the vessel. It should be
noted that he is the author of the document identified in Discovery as Kenai-150
and produced the so called by "report" which was characterized as such by
defendants. None of the opinions he will present at trial were as a result of his
special retention but rather will be based on his expertise generally after directly
examining the vessel.

(8) Ms. Patty Stout
Stabbert Marine & Industrial, LLC
Stabbert Maritime
2629 NW 54TH Street, Ste 201
Seattle, Washington 98107

Ms. Stout, an employee of Stabbert Marine and Industrial (Maritime) was
physically present at the October 2019 examination and condition survey of the hull
system on the M/V Iron Don and herself directly examined the coating system
applied by defendants some five months prior to October of 2019. As a percipient
witness, Ms. Stout has information relating to the condition of the vessel's hull as
it existed in 2019 and can offer factual and expert opinion testimony consistent with
her qualifications regarding same. With respect to those qualifications, Ms. Stout is
identified as a person with expertise in the field of vessel repair and maintenance,
including hull and marine coating systems, as well as the processes and procedures
employed routinely by shipyard to blast, paint and otherwise prepare vessels and
effectively apply such coating systems. Her testimony as a percipient hybrid
witness will generally focus on her opinions concerning negligent application of
the coating system, pitting of the hull, opinions as to the propriety of leaving the
blocked areas uncoated, and the rapid delamination of the vessel's hull coatings.

None of the opinions she will present at trial were as a result of her special retention but rather will be based on his expertise generally after directly examining the vessel.

(9)  Mr. Brian Galbraith
Stabbert Marine & Industrial, LLC
2629 NW 54TH Street, Ste 201
Seattle, Washington 98107

Mr. Galbraith is an employee of Stabbert Marine and Industrial (Maritime) is a percipient witness concerning the condition of the hull on the M/V Iron Don and the nature and cost of the repairs necessary to remediate the damage occasioned through faulty work performed by defendants.   His expertise is principally concerning regarding repair costs and remediation costs as well as both lay and expert (non-retained non-employee) opinions about the necessary repairs and the hull condition as it existed in 2019 as well as repair costs then versus now. Mr. Galbraith was also the principal drafter of the Repair Quote from Stabbert dated September 20, 2021, and will offer testimony in that capacity, specifically as it pertains to the area where the vessel is located and routinely operates, those areas being generally the waters off the coasts of Washington, Canada, and Alaska. None of the opinions he will present at trial were as a result of his special retention, but rather will be based on his expertise generally after examining the vessel and being in the yard where she was hauled out.

(10)  Mr. Kevin Koehnke
9612 Glenpointe Drive
Riverview, Florida 33569

*Mr. Koehnke was the captain of the F/V Iron Don during the fishing season in 2019 but is no longer in their employ. Mr. Koehnke has information generally pertaining to the operation of the vessel in 2019 while captain of said vessel as well as its condition during the 2019 salmon fishing season as well as the operation of the vessel in the waters of Alaska and Washington, etc. Mr. Koehnke's address will be supplemented when confirmed.*

(11)  Mark Shiffer
Mark Shiffer Surveyors, Inc.
P.O. Box 1669, Chalmette, Louisiana 70044

Mr. Shiffer is listed as a witness on the Witness and Exhibit List filed by defendants (untimely) on November 29, 2021 and was not listed in their discovery; however, subsequent discovery determined that Mr. Shiffer is a percipient witness with knowledge of the condition of the vessel, specifically the hull, and will be used by Kenai to tesify to same as well as for rebuttal/impeachment purposes and thus is being substituted here for the global identification on Kenai's Witness and Exhibit

List, Items 16 and 17, other party listed witnesses and rebuttal/impeachment witnesses.

(12)   Brandon Taravella, Ph.D.
Pelican Marine Design, LLC
124 Lac Sauvage Dr.
Luling, Louisiana 70070

Dr. Taravella is listed as a witness on the Witness and Exhibit List filed by defendants (untimely) on November 29, 2021 and was not listed in their discovery; however, subsequent discovery determined that Dr. Taravella is a percipient witness with knowledge of the condition of the vessel, specifically the hull, and will be used by Kenai to tesify to same as well as for rebuttal/impeachment purposes and thus is being substituted here for the global identification on Kenai's Witness and Exhibit List, Items 16 and 17, other party listed witnesses and rebuttal/impeachment witnesses..

### *Defendant's Witness List, CP Marine Services, LLC and Ten Mile Exchange, LLC:*

1.   Joseph Dardar
CP Marine Services, LLC
c/o Alfred J. Rufty
Jones Walker LLP
201 St. Charles Avenue,
Suite 5100
New Orleans, Louisiana 70170

Mr. Dardar is a representative of CP Marine Services, LLC and Ten Mile Exchange, LLC, who will testify regarding the M/V Iron Don, its condition, history and retrieval from Larose; dealings with Kenai; the behavior of Kenai representatives; happenings at and around the shipyard while the Iron Don was present; the work done on the vessel; invoicing and payment; and Kenai's alleged damages.

2.   Ms. Gina Toromina
CP Marine Services, LLC
c/o Alfred J. Rufty
201 St. Charles Avenue,
Suite 5100
New Orleans, Louisiana 70170

Ms. Taromina is an employee of defendants who may testify regarding the facts and circumstances surrounding communications and agreements with Kenai; the behavior of Kenai representatives; happenings at and around the shipyard while the Iron Don was present; the work done on the vessel; invoicing and payment.

3.      Mr. B. J, Creppel
        Yard Supervisor
        CP Marine Services, LLC
        c/o Alfred J. Rufty
        201 St. Charles Avenue,
        Suite 5100
        New Orleans, Louisiana 70170

        Mr. Creppel is the yard supervisor at CP Marine Services, who may testify regarding
        the facts and circumstances surrounding the work performed on the M/V IRON DON;
        communications with Kenai representatives; happenings at and around the shipyard
        while the Iron Don was present; and/or Kenai's alleged damages.

4..   J.W. Bergeron
        Shipyard Worker
        c/o Alfred J. Rufty
        201 St. Charles Avenue,
        Suite 5100
        New Orleans, Louisiana 70170

        Mr. Bergeron is a shipyard worker employed at C.P. Marine Services, who may testify
        regarding the facts and circumstances surrounding the work performed on the M/V
        IRON DON; communications with the Adlers and Kenai representatives; happenings
        at and around the shipyard while the Iron Don was present; and/or Kenai's alleged
        damages.

5.      Jerry Verdin
        Shipyard Superintendent
        c/o Alfred J. Rufty
        201 St. Charles Avenue,
        Suite 5100
        New Orleans, Louisiana 70170

        Mr. Verdin is a shipyard superintendent employed by CP Marine Services, who may
        testify regarding the facts and circumstances surrounding the work performed on the
        M/V IRON DON; communications with Kenai representatives; happenings at and
        around the shipyard while the Iron Don was present; and/or Kenai's alleged damages.

6.   Levi C. Adler
        Director
        Kenai Ironclad Corp.
        10132 Long Rifle Dr.
        Fort Worth, Texas 76108

        Mr. Levi Adler a director and Chief Financial Officer of Kenai who may be called to
        testifiy concerning the history, purchase and condition of the Iron Don; discussions

and agreements between the parties; happenings at the shipyard; the vessel's activities after leaving the shipyard; and/or Kenai's alleged damages.

7      Austin J. Adler
Director
Kenai Ironclad Corp.
1131 Redoubt Ave
Kenai, Alaska 99611

Mr. Adler is the Chief Operating Officer of Kenai who may be called to testify concerning the history, purchase and condition of the Iron Don; discussions and agreements between the parties; happenings at the shipyard; the vessel's activities after leaving the shipyard; and/or Kenai's alleged damages.

8.    Jeffery Adler
3709 Ridge Road
Willow Park, Texas 76108

Jeff Adler may be called to testify concerning the history, purchase and condition of the Iron Don; discussions and agreements between the parties; happenings at the shipyard; the vessel's activities after leaving the shipyard; and/or Kenai's alleged damages.

9.    Mr. Tom Dinh
Tom's Marine & Salvage
3008 Jean Lafitte Blvd.
Jean Lafitte, Louisiana 70067

Mr. Dinh may testify regarding events at the shipyard and related communications; and/or work done on the Iron Don after it left CP Marine.

10.    Mr. John Gomez

Former Sherwin-Williams Paint Representative, who may be called to testify about facts and circumstances relating to the paint purchased by Kenai for the Iron Don and its application.

11.    Doug Karlberg

Former crewmember of IRON DON, who may be called to testify about the operation and condition of the IRON DON after it left CP Marine.

12.    Wesley Shiffer

Marine Surveyor, who may be called to testify about audio gauging he performed on the IRON DON.

13.    Travis Terrebonne

And/or other representative of Industrial Diesel Services, LLC, who may be called to testify about hi dealings with Kenia in relation to the sale of engines for the vessel.

14.     Any witness necessary for authentication of records.

**STATEMENT CONCERNING THE FILING OF THE WITNESS LISTS**:

Plaintiff Kenai filed its witness list together with its exhibit list in accordance with the Court's Scheduling Order on November 26, 2021. Defendants filed their witness list together with its exhibit list on November 29, 2021.

**14. JURY OR NON-JURY STATEMENT**

This is a bench trial pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and will be tried to the Court as to all issues of fact and law.  Proposed findings of fact and conclusions of law, along with a separate trial memorandum are required and will be filed electronically, not less than five full working days prior to trial, unless specific authority to the contrary is granted by this Court.

**15. BIFURCATION**

The issue of liability will be tried together with damages.

**16. STATEMENT DESCRIBING OTHER MATTERS THAT MAY EXPEDITE DISPOSITION OF THE CASE**

The parties are unaware of anything which might expedite the disposition of this case.

**17. TRIAL COMMENCEMENT**

Trial shall commence on February 14, 2022 at 9:00 a.m. The parties have conferred and believe that a realistic estimate of the number of days required to try this case is two to three days.

**18. CONFERENCE OF THE PARTIES**

This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared in person.  Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court, to prevent manifest injustice.

### 19. <u>SETTLEMENT POSSIBILITIES</u>

The possibility of settlement in this case was considered.  Two settlement conferences have been held with Magistrate Donna P. Currault. Settlement could not be reached.

Dated: **Thursday, January 20, 2022**

Respectfully Submitted,

**BOHMAN | MORSE LLC**

/s/Martin S. Bohman
MARTIN S. BOHMAN T/A (#22005)
HARRY E. MORSE (#31515)
400 Poydras St., Ste. 2050
New Orleans, LA  70130
Telephone: (504) 930-4009
*Attorneys For Kenai Ironclad Corp.*


/s/ Alfred J. Rufty, Jr.
Alfred J. Rufty, III
JONES WALKER LLP
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8547
Fax: (504) 589-8457
arufty@joneswalker.com


_____
HON. NANETTE JOLIVETTE BROWN
UNITED STATES DISTRICT JUDGE